IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DARICK FOOTS**                                                                                                         **PLAINTIFF**
**ADC #103593**

v.                                        Case No. 4:21-CV-00504-LPR

**ARKANSAS GENERAL ASSEMBLY, et al.**                                            **DEFENDANTS**

### ORDER

Plaintiff Darick Foots instituted this action pro se on June 10, 2021.[1] Mr. Foots was one of many Arkansas state inmates who filed lawsuits challenging Arkansas Act 1110 of 2021. On August 23, 2021, the Court consolidated all of the Act 1110 cases and chose three cases as representative test cases.[2] On December 1, 2021, the Court administratively stayed "[a]ll other cases (and motions in those other cases)."[3] Mr. Foots's case was not one of the three test cases. So his case was stayed.

On March 16, 2022, the Court entered a final Order and Judgment in the three test cases.[4] That same day, the Court ordered the administrative termination of all the other cases (including Mr. Foots's case) that had been stayed pending the outcome of the three test cases.[5] The Court did this because its final Order and Judgment in the three test cases "likely address[ed] or moot[ed] most of the other cases . . . ."[6] The Court acknowledged, however, that plaintiffs in the administratively terminated cases may "believe[] there is still a live claim (related to Act 1110 or

---

[1] Compl. (Doc. 1).

[2] Order (Doc. 14) at 5–6.

[3] *Hayes v. Rutledge*, 4:21-cv-00347 (Doc. 254) [*hereinafter Hayes Master Docket*]. The three test cases were *Hayes*, *Lamar v. Hutchinson*, 4:21-cv-00529, and *Holloway v. Ark. Gen. Assembly*, 4:21-cv-00495.

[4] *Hayes Master Docket* (Docs. 422 & 423).

[5] Order (Doc. 19).

[6] *Id.* at 11.

otherwise) to adjudicate."[7]  The Court therefore "allow[ed] each plaintiff in the various administratively terminated cases to move to re-open their case . . . ."[8]

On June 27, 2022, Mr. Foots filed a Motion to Reimburse Federal Filing Fees.[9]  In that Motion, Mr. Foots sought a Court order requiring Defendants "to repay" Mr. Foots's federal filing fee.[10]  While Mr. Foots used the word "repay," it was clear that Mr. Foots was seeking costs from Defendants.[11]  Mr. Foots also requested "[a]ll original relief" from his Complaint, as well as "attorney fees paid by Defendants."[12]  The Court construed that Motion as a request that the Court reopen Mr. Foots's case and award him costs as a prevailing party.[13]  The Court granted the Motion in part, reopening the case while emphasizing that Mr. Foots was not yet a "prevailing party" entitled to costs because he had not succeeded in his individual case.[14]  Defendants then filed the Amended Motion to Dismiss presently pending before the Court.[15]

Defendants argue, among other things, that Mr. Foots's case should be dismissed because it has become moot.[16]  They acknowledge that, in May of 2021, they confiscated $1,400 of stimulus funds from Mr. Foots.[17]  But they go on to say that, after this Court entered a permanent injunction

---

[7] *Id.*

[8] *Id.*

[9] Mot. to Reimburse (Doc. 20).

[10] *Id.*

[11] *Id.* at 1 ("I would like the [a]mount of $350.00 placed on my inmate trust fund account by Defendants.").

[12] *Id.* at 2.

[13] Order (Doc. 21) at 2–3.

[14] *Id.* at 3.

[15] Defs.' Am. Mot. to Dismiss (Doc. 24).  Defendants filed their first Motion to Dismiss back in August of 2021.  *See Hayes Master Docket* (Doc. 61).  When the Court reopened Mr. Foots's individual case, it instructed Defendants to "renew their original motion to dismiss, file a new motion to dismiss, or file an answer."  Order (Doc. 21) at 3.

[16] Br. in Supp. of Defs.' Am. Mot. to Dismiss (Doc. 25) at 4–6.

[17] Ex. 1 (Jerry Aff.) to Defs.' Am. Mot. to Dismiss (Doc. 24-1) ¶ 4.

2

in *Hayes*, they returned the $1,400 to Mr. Foots.[18]  Mr. Foots fails to address this argument at all in his Response.  He instead combats only one of Defendants' other arguments, specifically the argument that the case should be dismissed under the doctrine of *res judicata*.[19]  But that argument doesn't matter anyway if Mr. Foots's case is moot.[20]  And all of the evidence in the record before the Court shows that Mr. Foots's case is moot: The Complaint says that he had money wrongfully taken away from him; Defendants have testified under oath that they indeed took the money but have given all of it back to Mr. Foots in compliance with this Court's injunction.[21]  There is no evidence (or even any allegation) that there is some amount of confiscated funds that have not been accounted for.[22]  That means there is no longer any injury to remedy.[23]  Accordingly, the

---

[18] *Id.* ¶ 5.

[19] *See* Pl.'s Resp. to Defs.' Am. Mot. to Dismiss (Doc. 28) at 3; Pl.'s Surreply to Defs.' Am. Mot. to Dismiss (Doc. 30).

[20] *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . ." (internal quotation marks and citation omitted)).

[21] The Court is able to "consider[] matters outside the pleadings" because a motion to dismiss for mootness is an attack on subject-matter jurisdiction.  *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citation omitted).

[22] The Court understands that Mr. Foots considers himself a "prevailing party" entitled to receive costs, such as his federal filing fee, from Defendants.  *See* Fed. R. Civ. P. 54(d)(1).  It's not entirely clear whether Mr. Foots qualifies as a "prevailing party" in the case at bar.  *See Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) ("When a case has been rendered moot, a prevailing party is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." (internal quotation marks and citation omitted)).  And it's also unclear whether one or more immunity doctrines would preclude taxing such costs to Defendants in this case.  Mr. Foots is welcome to file a post-judgment motion for costs, and the Court will consider the propriety of shifting costs after receiving the benefit of adversarial briefing.

[23] The $1,400 payment represents one of three possible federal stimulus payments.  So, theoretically, there could be two more federal stimulus checks coming to Mr. Foots in the future.  At first glance, then, it would appear that Defendants returning the $1,400 doesn't necessarily moot Mr. Foots's requests for (1) a declaration that Act 1110 violates the Fifth and Fourteenth Amendments and (2) an injunction prohibiting Defendants from spending his confiscated COVID-stimulus funds.  Compl. (Doc. 1) at 9.  That's because declarations and injunctions are prospective relief meant to prevent harms that are likely to occur in the future.  *See Justice Network, Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  But, in the specific context of this case, these requests are indeed moot.  Nowhere in his numerous filings does Mr. Foots allege (plausibly or otherwise) that he will be receiving any more checks in the future.  At the time he filed his Complaint in June of 2021, his $1,400 check had already been confiscated.  Compl. (Doc. 1) at 4, 8; *see* Ex. 1 (Jerry Aff.) to Defs.' Am. Mot. to Dismiss (Doc. 24-1) ¶ 4 (confiscation occurred in May of 2021).  And the injunctive relief sought in his original Complaint was to prevent the *spending* of those confiscated funds, not to prevent more confiscations in the future.  Compl. (Doc. 1) at 9.  In every one of his filings since the *Hayes* injunction (and the return of his $1,400), Mr. Foots has asked simply that he be reimbursed the $350 filing fee for the case at bar; he has not asked for any prospective

Court GRANTS Defendants' Amended Motion to Dismiss.[24]

IT IS SO ORDERED this 11th day of January 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

relief preventing a future confiscation. *See* Mot. for Reimbursement (Doc. 20); Mot. for Ruling (Doc. 22); Pl.'s Resp. to Defs.' Am. Mot. to Dismiss (Doc. 28); Pl.'s Surreply to Defs.' Am. Mot to Dismiss (Doc. 30). Thus, Mr. Foots's requests for a declaration and injunction are moot because the injury he sought to avoid—Defendants spending his confiscated stimulus funds—has been remedied by Defendants returning the $1,400 to Mr. Foots.

[24] Defs.' Am. Mot. to Dismiss (Doc. 24). There is also currently a Motion for Ruling by Mr. Foots pending on the docket. *See* (Doc. 22). In that Motion, Mr. Foots seeks a judgment in his favor because Defendants did not file their Amended Motion to Dismiss within the twenty-one-day timeframe given by the Court in its July 27, 2022 Order. *Id.* Mr. Foots is right that Defendants didn't file within twenty-one days, but that was for a good reason. When the Court deconsolidated all of the Act 1110 cases back into their individual dockets, the defense attorneys for each case were accidentally left off of the individual case dockets. So Defendants didn't receive notice of the Court's July 27, 2022 Order. The Court uncovered and remedied this administrative error on September 2, 2022. Defendants then filed their Amended Motion to Dismiss twenty-one days later. Defs.' Am. Mot. to Dismiss (Doc. 24). The Court therefore DENIES Mr. Foots's Motion for Ruling.